UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
MATTHEW J. HANLEY,           Chapter 7
    Debtor                 Case No. 08-17056-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

WALTER R. ABBOTT, JR.,
    Plaintiff
v.                           Adv. P. No. 08-1381
MATTHEW J. HANLEY,
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

    The matter before the Court is the Motion to Dismiss the Plaintiff's Amended Complaint filed by the Defendant, Matthew J. Hanley (the "Debtor" or the "Defendant"). The Debtor seeks dismissal of the Amended Complaint filed by Walter R. Abbott, Jr. ("Abbott" or the "Plaintiff") on the ground that his Amended Complaint fails to allege plausible facts to state a claim under 11 U.S.C. § 523(a)(2)(A) based upon the standard for evaluating the sufficiency of complaints articulated by the United States Supreme Court in <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937 (2009), and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

1

The Plaintiff timely filed his initial Complaint against the Debtor on December 15, 2008, and the Debtor moved to dismiss that Complaint. Treating the Debtor's first Motion to Dismiss as a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e), made applicable to this proceeding by Fed. R. Bankr. P. 7012, the Court ordered the Plaintiff to file an Amended Complaint. The Plaintiff complied, and the Debtor now moves to dismiss the Amended Complaint. The issue presented is whether the Plaintiff satisfied his burden of alleging sufficient facts, which if accepted as true, state a claim for relief that is plausible on its face. *See* Iqbal, 129 S.Ct. at 1949.

## II. PROCEDURAL BACKGROUND

The Debtor filed a voluntary Chapter 7 petition on September 19, 2008. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, he listed Abbott and Associates and Walter R. Abbott, Jr. as the holders of unliquidated claims in the sum of $125,000. On January 26, 2009, after the commencement of the adversary proceeding, the Debtor amended Schedule F to designate the claims as disputed.

On November 11, 2008, the Chapter 7 Trustee filed a Report of No Distribution. On December 17, 2008, the Court granted the Debtor a discharge.

## III. THE AMENDED COMPLAINT

In order to properly apply the standard articulated by the Supreme Court, this Court must summarize the allegations of the Plaintiff's Amended Complaint.

According to the Plaintiff, he and the Debtor and members of the Debtor's family, including his mother, Joan Hanley, and his sister, Jennifer Hanley, were long-time friends.

2

The Debtor owned a business known as Business Products Online, Inc. ("Business Products"). He regularly apprised Abbott about the status of his business, and in the late 1990s and again in late 2000, the Debtor informed Abbott that he and Business Products were experiencing financial difficulties.

In October of 2001, the Debtor approached Abbott seeking a loan in the sum of $100,000. Abbott informed the Debtor that he would not agree to a loan unless it was secured by real property located at 52 Ridge Street, Arlington, Massachusetts (the "property"), title to which was in the name of the Debtor and his brother, Nathan Hanley.

The Debtor agreed to provide security for the loan. According to Abbott, "[i]n or around October 2001, in reliance on Hanley's representation that the loan would be secured by the real property at 52 Ridge Street, Abbott and Hanley agreed in principle to the loan," and "Hanley told Abbott that he would incur all legal fees or other costs associated with implementing the loan, and that he would file a mortgage deed on 52 Ridge Street, in favor of Abbott, with the Middlesex County Registry of Deeds." Additionally, Abbot alleged that the Debtor told him he had "retained legal counsel to draft the documents necessary to memorialize the terms and conditions of the loan, including, but not limited to a mortgage deed on 52 Ridge Street in favor of Abbot that would be recorded with the Middlesex County Registry of Deeds."

In early 2002, the Debtor informed Abbott that he was continuing to experience financial difficulties and that he and his brother would be forced to sell the property to their sister, Jennifer Hanley, with whom he had discussed the loan from Abbott. Indeed,

3

according to Abbott, the Debtor informed him that he had discussed his proposed loan with his extended family.

In early March of 2002, the Debtor told Abbott that Jennifer Hanley had agreed to sign a note and mortgage on the property which she was acquiring from her brothers in exchange for the $100,000 loan. According to Abbott, the Debtor also told him that his legal counsel was in the process of drafting the documents necessary to memorialize the loan.

On March 14, 2002, Hanley contacted Abbott urgently requesting $10,800 to complete the sale of the property to Jennifer Hanley. Abbott alleged that he told Hanley that the advance for the closing would not be part of the loan agreement, but that Hanley promised him that "all loan monies, including this loan advance, would be secured by a promissory note and mortgage deed on 52 Ridge Street, which his legal counsel was drafting and which would be filed with the Middlesex Registry of Deeds." Abbott also alleged that Hanley promised him that his sister would sign a secured promissory note and mortgage and that "he would personally record the secured promissory note and mortgage deed in the Middlesex County Registry of Deeds."

On March 14, 2002, in reliance upon Hanley's promises and based upon their long-time friendship, Abbott alleged that he gave the Debtor an advance payment on the loan in the amount of $10,800, as well as a document captioned "'Promissory Note-Secured' for $50,000 [sic] which identified Jennifer Hanley as the borrower and which, by its terms and conditions, gave Abbott a secured interest in 52 Ridge Street." According to Abbott, during his conversations with the Debtor on March 14, 2002, Hanley again promised Abbott that

4

his sister, Jennifer Hanley, who was about to purchase 52 Ridge Street, was aware of the loan agreement, would sign the "Promissory Note-Secured" and that the mortgage referenced in that document would be filed in the Middlesex County Registry of Deeds. According to Abbott, "Hanley further impressed upon Abbott to agree to a promissory note in the amount of $50,000, instead of the full loan amount of $100,000, as an accommodation to his sister and as a favor to his family friends."

On March 18, 2002, Abbott alleged that Hanley and his brother transferred the property to Jennifer Hanley and her partner, Lisa Guglietta. According to Abbott, over one month later, on April 23, 2002, Jennifer Hanley executed a promissory note in the sum of $50,000, in the presence of and witnessed by Hanley, and Hanley gave the note to Abbott. Additionally, according to Abbott, "[o]n or about April 23, 2002, Hanley promised him that the mortgage deed referenced in the promissory note would be filed with the Middlesex County Registry of Deeds."

Abbott further alleged that on or about May 14, 2002, Hanley and Business Products executed additional documents to memorialize the terms of the loan agreement, and Hanley again told Abbott the mortgage deed would be filed with the Middlesex County Registry of Deeds. Between May 20, 2002 and September 27, 2002, Abbott loaned Hanley an additional $89,200.09.[1]

According to Abbott, on or about June 25, 2004, Jennifer Hanley and Lisa Guglietta

---

[1] Abbott did not attach copies of these or any documents to his Amended Complaint. It is thus unclear whether the Debtor ever executed a promissory note in the amount of $100,000 in favor of Abbott.

5

conveyed the property to themselves and Joan Hanley, the Debtor's mother, for the consideration of $10.00, although the Debtor continued to reside in the property.

In late 2004 and 2005, Abbott and the Debtor discussed repayment of the loan. During those conversations, Abbott alleged that he reminded the Debtor about the mortgage on the property and "expressed his belief that Jennifer Hanley was the title owner of 52 Ridge Street and that he was the beneficiary of a mortgage deed filed with the Middlesex County Registry of Deeds." The Debtor never corrected or advised Abbott that his sister had conveyed the property, or that he had never recorded the mortgage. Abbott alleged that the Debtor has never repaid the principal or interest associated with the loan.

According to Abbott, Hanley obtained the loan from Abbott by way of false pretenses when he specifically misrepresented to Abbott that he would record a mortgage securing the loan; that he falsely represented to Abbott that he would file a mortgage; that he relied on Hanley's false representations and would not have loaned any monies absent the recordation of a mortgage; that the Debtor never intended to record a mortgage and, instead, intended Abbott to rely upon his misrepresentations regarding the filing of a mortgage; that Abbott's reliance upon the Debtor's promises was justified in view of the long-time friendship among Abbott, the Debtor and the Debtor's family; and that the Debtor committed actual fraud upon Abbott in assisting or otherwise facilitating the transfer of ownership of the property from his sister to his mother, "thereby preventing Abbott from enforcing the promissory note or otherwise perfecting his security interest in the real property;" and that Abbott was damaged as a result.

6

## IV. THE STANDARD FOR EVALUATING THE MOTION TO DISMISS

In <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court amplified its discussion of the standard for dismissal contained in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), which modified the standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), for evaluating whether a complaint is sufficient to survive a motion to dismiss. The Court stated:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in <u>Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. <u>Id.</u>, at 555, 127 S.Ct. 1955 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." <u>Id.</u>, at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u>, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u>, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Ibid.</u> Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u>, at 557, 127 S.Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in <u>Twombly</u>. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. <u>Id.</u>, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not

7

bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1949-50. *See also* Courie v. Alcoa Wheel & Forged Products, __ F.3d __, 2009 WL 2497928 (6th Cir. Aug. 18, 2009)(noting that "[t]he Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of Conley v. Gibson" and now requires a complaint with "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face'").

## V. ANALYSIS

Section 523(a)(2)(A) of the Bankruptcy Code excepts from a Chapter 7 discharge any debt "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by - (A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition." Thus, "under the traditional common law rule, *see* Restatement (Second) of Torts § 525 (1977), a

8

defendant will be liable if (1) he makes a false representation, (2) he does so with fraudulent intent, i.e., with "scienter," (3) he intends to induce the plaintiff to rely on the misrepresentation, and (4) the misrepresentation does induce reliance, (5) which is justifiable, and (6) which causes damage (pecuniary loss)." Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).

In McClellan v. Cantrell, 217 F.3d 890 (7th Cir. 2000), the United States Court of Appeals for the Seventh Circuit expanded the scope of section 523(a)(2)(A)'s exception to discharge beyond the common law tort of misrepresentation. It observed that fraud is not limited to misrepresentations and misleading omissions, 217 F.3d at 893, adding "'[f]raud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.'" Id. (quoting Stapleton v. Holt, 207 Okla. 443, 250 P.2d 451, 453-54 (Okla.1952)).

In McCrory v. Spigel (In re Spigel), 260 F.3d 27 (1st Cir. 2001), the United States Court of Appeals for the First Circuit declined to adopt the McClellan approach. It stated, however, that "McClellan is consistent with our existing precedent in that it also requires a direct link between the alleged fraud and the creation of the debt." 217 F.3d at 32 n. 7.

Turning to Abbott's Amended Complaint, this Court notes that it is not devoid of facts. Indeed, the Court finds that Abbott pleaded sufficient facts to establish a plausible

9

claim for relief under the Iqbal/Twombly standard. The facts alleged by Abbott, however, do not fit neatly within the traditional parameters of a complaint under section 523(a)(2)(A) because the Debtor neither signed a promissory note nor executed the mortgage as he and his brother had transferred the property to his sister and her partner before the sister executed a promissory note in the sum of $50,000 and the Debtor and Business Products executed additional loan documentation. The Debtor's promise related to an act that his sister and her partner were required to perform, namely the execution of a mortgage which the Debtor agreed to provide as security for the loan from Abbott.

The Debtor argues, *inter alia*, that "even assuming that the plaintiff could prove a promise by the debtor to grant a mortgage, that promise is not in writing, or at least not attached to the complaint, and a promise to convey real property must be in writing to be enforceable." The Debtor also argues that Abbott's reliance was not justifiable. Referencing paragraphs 17, 24 and 29 of the Amended Complaint, the Debtor adds that Abbott was represented by counsel and, thus, was unjustified in relying upon the Debtor's promise to record the mortgage. This latter argument is a misreading of the Amended Complaint, however, because it was the Debtor who obtained the services of legal counsel to draft documents, not Abbott.

The Debtor also points to Abbott's failure to attach to his Amended Complaint documents which he referenced in it, including the documents executed on or about May 14, 2002. Citing Gilmore v. Citigroup, Inc. (In re Citigroup, Inc.), 535 F.3d 45, 52 (1st Cir. 2008), he maintains that this Court is "free to disregard 'bald assertions, unsupportable

10

conclusions, and opprobrious epithets.'" He suggests that the Plaintiff's reference to additional documents is a bald assertion which this Court can disregard and which warrants an inference that the documents do not plausibly support a cause of action under section 523(a)(2).[2]

The Court rejects the Debtor's arguments for several reasons. The Amended Complaint does not concern the enforceability of a mortgage, but the promise to record a mortgage. Additionally, Abbott alleged that he justifiably relied upon Hanley's representations because of their long-term friendship and that he was damaged as a result. The justifiable reliance standard articulated by the Supreme Court in Field v. Mans, 516 U.S. 59, 71 (1995), requires an evaluation of "'the qualities and characteristics of the

---

[2] The First Circuit stated the following:

On the district court's grant of appellees' motion to dismiss, we must affirm unless Gilmore's complaint alleges "a plausible entitlement to relief," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1967-69, 167 L.Ed.2d 929 (2007); ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46 (1st Cir.2008), taking all well-pleaded facts contained in the complaint as true and drawing all reasonable inferences therefrom in the plaintiff's favor, Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). Nevertheless, we are free to disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 4 (1st Cir. 2007) (internal quotation marks omitted). In assessing the motions under Fed. R. Civ. P. 12(b)(6), we may also review documents outside of the pleadings where they are undisputed, central to plaintiffs' claims, and sufficiently referred to in the complaint or incorporated into the movant's pleadings, as the relevant CAP documents are here. Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).

Citigroup, Inc., 545 F.3d at 52.

11

particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.'" The Court finds that because Abbott alleged that he relied upon a long-term friendship he did more than make a conclusory statement in support of his claim under section 523(a)(2)(A). *See* Sanford Inst. for Sav. v. Gallo, 156 F.3d 71, 74 (1st Cir. 1998) ("A party may justifiably rely on a misrepresentation even when he could have ascertained its falsity by conducting an investigation."). Because of the long-term friendship, Abbott was not required to allege that he performed the type of due diligence required of a stranger to a transaction before advancing funds to establish justifiable reliance. Id. at 75. Accordingly, viewing the facts in the light most favorable to Abbott, this Court rules that Abbott's Amended Complaint cannot be dismissed on the ground that it fails to contain facts sufficient to state a plausible claim for relief due to lack of justifiable reliance under section 523(a)(2)(A).

Generally, a promise of future action, in this case the Debtor's representation that he would have his sister (and presumably her partner) execute a mortgage which he would record, is insufficient to support a claim under section 523(a)(2)(A). *See, e.g.*, Allison v. Roberts (In re Allison), 960 F.2d 481, 484 (5th Cir. 1992) ("[A] promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise subsequently is breached."); James Cape & Sons Co. v. Bowles (In re Bowles), 318 B.R. 129, 144 (Bankr. E.D. Wis. 2004) ("[A] cause of action for fraud does not exist for misrepresentations as to future promises or facts. . . ."); New Austin Roosevelt Currency Exch., Inc. v. Sanchez (In re Sanchez), 277 B.R. 904, 908 (Bankr. N.D. Ill. 2002) (observing

12

that a check is a promise of future payment and holding debt for NSF check dischargeable absent evidence of present intent not to honor it); Carroll & Sain v. Vernon (In re Vernon), 192 B.R. 165, 171-72 (Bankr. N.D. Ill. 1996) (holding debt for legal fees dischargeable where plaintiff law firm had not demonstrated intent not to pay); Kuper v. Spar (In re Spar), 176 B.R. 321, 327 (Bankr. S.D.N.Y. 1994) ("A promise to perform in the future is insufficient."); Rowe v. Showalter (In re Showalter), 86 B.R. 877, 880 (Bankr. W.D. Va. 1988) ("A mere promise to repay, and nothing more, does not rise to the level of a representation under § 523(a)(2)."); Lisk v. Criswell (In re Criswell), 52 B.R. 184, 196-97 (Bankr. E.D. Va. 1985) (The "representation" must be "one of existing fact" and not "merely an opinion, expectation or declaration of intent."). See also Randle v. Highfill (In re Highfill), 336 B.R. 701, 706-707 (Bankr. M.D.N.C. 2006). Similarly, "[a] promise, by its nature, is a representation of intent to do that which is promised, to keep or honor the promise. A promise can constitute a false representation, but only if it is made without intent to honor it: the operative misrepresentation is one of intent to honor the promise." DCFS Trust v. Goldstein (In re Goldstein), 345 B.R. 412, 422 (Bankr. D. Mass. 2006) (citing Palmacci, 121 F.3d at 786-787).

In the instant case, the Debtor's repeated promises to record a mortgage to be executed by his sister in conjunction with both a promissory note which she executed obligating repayment of monies advanced by Abbott, as well as monies lent to the Debtor for his business on and after May 14, 2002 were unquestionably promises to perform acts in the future. The issues of whether the Debtor's statements to that effect were false and whether he had no intention of honoring the promises or recording the mortgage despite

13

his repeated promises to do so, either at the time of the initial advance or at the time of subsequent advances, are ultimately issues of fact which must be proven at trial. Abbott alleged that the Debtor actively solicited him for money because of personal and business problems and never intended to record a mortgage. The ultimate resolution of the issue of whether the Debtor had no intention of recording a mortgage will depend upon the credibility of the Debtor when he is called to testify at trial. The record, when viewed in the light most favorable to Abbott, however, permits the inferences that the Debtor made the promises to record the mortgage with the intention of inducing Abbott to make the loan and that he never had any intention of recording the mortgage as he remained silent during the parties' discussions in 2004 and 2005, not only about the existence of a recorded mortgage but also about the conveyance of the property in September of 2004. The facts alleged by Abbott also may permit the inference that the Debtor, with the participation of family members, obtained monies from Abbott by actual fraud. *See* McClellan v. Cantrell, 217 F.3d 890 (7th Cir. 2000). As noted by the Bankruptcy Appellate Panel in Mellon Bank N.A. v. Vitanovich, 259 B.R. 873 (B.A.P. 6th Cir. 2001), "[w]hen a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code." Id. at 877.

## VI. CONCLUSION

In view of the foregoing, the Court finds that Abbott's Amended Complaint states a plausible claim for relief. The Court shall enter an order denying the Debtor's Motion to

14

Dismiss.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: September 1, 2009
cc: William O. Monahan, Esq., David G. Baker, Esq.

15